1

2

3

4                                  UNITED STATES DISTRICT COURT

5                                NORTHERN DISTRICT OF CALIFORNIA

6

7    MANUEL ARREOLA,                               Case No. 16-cv-03133-JD

8                   Plaintiff,

9          v.                                      **ORDER RE MOTION FOR JUDGMENT
                                                   ON THE PLEADINGS**
10   CALIFORNIA DEPARTMENT OF
     CORRECTIONS AND REHABILITATION,
11   et al.,

12                  Defendants.

13         Plaintiff Manuel Arreola has sued the California Department of Corrections and

14   Rehabilitation ("CDCR"), Warden R. Grounds, Dr. R. Bright, Dr. Moon, Officer J. Lower-

15   Brodersen, and Officer J. Cruz for claims arising out of medical care while he was incarcerated in

16   the California state prison system. Dkt. No. 1-9. Each individual is sued in his official and

17   individual capacity. *Id.* ¶ 9. Defendants have filed a motion for judgment on the pleadings for

18   Arreola's second cause of action, which alleges violations of Title II of the Americans with

19   Disabilities Act ("ADA") under 42 U.S.C. § 12132. Dkt. No. 8. The motion is granted with leave

20   to amend.

21                                          **BACKGROUND**

22         While the complaint is not entirely clear on a number of points, the salient allegations are

23   that on July 10, 2013, Arreola went to the San Joaquin General Hospital for a "femoral-to-femoral

24   arterial bypass" while housed at the Salinas Valley State Prison ("SVSP"). Dkt. No. 1-9 ¶ 14. A

25   stent was placed inside his left femoral artery, "tunneled under his skin above his groin," and

26   connected to his right femoral artery. *Id.* The vascular surgeon instructed Arreola "not to bend at

27   the waist … or do any activity that would constrict the blood flow to his right leg in the femoral

28   area for at least three to four weeks." *Id.*

United States District Court
Northern District of California

On July 19, 2013, Officers Cruz and Lower-Brodersen, Correctional Officers at SVSP, arrived at the hospital to drive Arreola back to prison in a passenger van. *Id.* ¶¶ 18, 20.  Arreola told the officers that he needed transport in an ambulance, and that his surgeon had warned about severe complications if he did not comply with the movement restrictions. *Id.* ¶¶ 20-21.  Officer Cruz said they "had not been given such orders," and they made Arreola get in the van because they were "due back to work at 6:00 a.m. the following day." *Id.* ¶¶ 20-25.  Arreola was in a seated position for four hours before the group stopped, for some unexplained reason, at the Corcoran State Prison. *Id.* ¶¶ 25-26.  During this time, the incision on his left leg reopened and he "developed a large, golf-ball-sized lump" under the incision on his right leg. *Id.* ¶ 26.

At Corcoran, Arreola was taken to the prison infirmary and put on a gurney. *Id.* ¶ 27.  Officer Cruz then moved Arreola into a holding cell to wait for hospital staff. *Id.* ¶ 29.  "Despite outward signs of pain and distress, [Arreola] was left to lie down on the concrete floor" of the holding cell until he was transferred to "the Acute Care Hospital." *Id.* ¶¶ 30-31.  Arreola went back to the San Joaquin General Hospital on July 23, 2013, in an ambulance. *Id.* ¶ 38.

A few weeks later, Officers Molar and Johnson arrived at the hospital to return Arreola to SVSP. *Id.* ¶ 41.  He again told the officers that he was "not supposed to sit up or bend at the waist for long periods at a time." *Id.*  After reviewing his records and transportation instructions, the officers found no transport restrictions noted and they transferred him in a regular vehicle. *Id.*  Arreola was in a seated position for nine hours, and when he arrived at the prison, his "entire right leg was numb and swollen." *Id.* ¶¶ 41-42.  From September 2013 until his release from prison on August 14, 2014, his symptoms worsened and he developed "severe muscle stiffness and tightness in his right leg." *Id.* ¶ 44.  His right leg was amputated on June 30, 2015. *Id.* ¶ 46.

Arreola filed this action pro se in Monterey County Superior Court in July 2014, while he was an inmate. Dkt. No. 1 ¶ 1; Dkt. No. 1-9 ¶ 12.  In December 2015, after being released from custody and retaining a lawyer, he filed an amended complaint for negligence. Dkt. No. 1 ¶ 3; Dkt. No. 1-8.  In May 2016, the Superior Court granted Arreola's motion to file a second amended complaint and he amended to add claims for violations of the ADA and deliberate indifference to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    serious medical needs under 42 U.S.C. § 1983.  Dkt. No. 1 ¶ 4; Dkt. No. 1-9.  On June 9, 2016,

2    defendants removed the case to this court.  Dkt. No. 1.

3        In the current motion, all of the defendants seek dismissal of the ADA claim.  Dkt. No. 8.

4    That claim, however, is directed only to CDCR, Dkt. No. 1-9 at 13, and this order resolves the

5    motion on that basis.

6                               **LEGAL STANDARD**

7        A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)

8    challenges the legal sufficiency of the claims asserted in the complaint.  "The principal difference

9    between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing.  Because the

10   motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion

11   applies to its Rule 12(c) analog."  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th

12   Cir. 1989); *see also Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).  To survive

13   a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible

14   on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

15   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

16   inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

17   678 (2009).  Judgment on the pleadings is therefore appropriate when, taking all the allegations in

18   the complaint as true, the moving party is entitled to judgment as a matter of law.  *Dunlap v.*

19   *Credit Prot. Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005).

20                                  **DISCUSSION**

21       The gravamen of the ADA claim is that the bypass left Arreola disabled within the

22   meaning of the ADA and that CDCR discriminated against him "by failing to reasonably

23   accommodate his disability during transportation and temporary housing on July 19, 2013."  Dkt.

24   No. 1-9 ¶¶ 60, 76.  Defendants urge dismissal of the ADA claim because Arreola's "[t]emporary

25   recovery from vascular surgery is not a qualifying disability" and because he has not alleged

26   exclusion from services or discrimination on the basis of a disability.  Dkt. No. 8 at 2-5.

27       To state an ADA claim under Title II, Arreola must allege facts plausibly showing that:

28   (1) he is an individual with a disability, (2) he is otherwise qualified to participate in or receive the

1   benefit of some public entity's services, programs, or activities, (3) he was either excluded from

2   participation in or denied the benefits of the public entity's services, programs, or activities, or was

3   otherwise discriminated against by the public entity, and (4) such exclusion, denial of benefits, or

4   discrimination was by reason of his disability.  *McGary v. City of Portland*, 386 F.3d 1259, 1265

5   (9th Cir. 2004).  A qualifying "disability" is "(A) a physical or mental impairment that

6   substantially limits one or more major life activities of such individual; (B) a record of such an

7   impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

8           Even assuming, purely for discussion and without actually holding, that Arreola had a

9   qualifying disability from the bypass and that CDCR is the responsible defendant, the complaint

10  fails to allege that he was denied participation in prison programs or services for being disabled.

11  Arreola says that CDCR "knew of [his] disability" and should have provided reasonable care or

12  accommodations on July 19, 2013, such as an ambulance for transport and a medical bed in the

13  holding cell.  Dkt. No. 1-9 ¶¶ 75-78.  While these allegations might point to indifference or

14  negligence, they do not show Arreola was discriminated against, or denied benefits, by reason of a

15  disability.  *Weinreich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir. 1997).

16  "The ADA prohibits discrimination because of disability, not inadequate treatment for disability."

17  *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010); *see also Calloway v. Contra*

18  *Costa Cty. Jail Corr. Officers*, No. 01-cv-2689-SBA, 2007 WL 134581, at *34 (N.D. Cal. Jan. 16,

19  2007) (ADA "not violated by a prison's failure to adequately address the medical needs of

20  disabled inmates").  Simply alleging a need for services is not enough.  Arreola must plausibly

21  allege that he was denied benefits or programs, or discriminated against, because of a disability.

22          Consequently, the ADA claim is dismissed.  Since this is Arreola's first attempt to allege

23  an ADA cause of action, he will have an opportunity to amend.  For the guidance of the parties in

24  the event this claim returns in a motion, CDCR should provide support for its position that the

25  definition of a "qualifying disability" in the *Armstrong* Remedial Plan should control over the

26  ADA's statutory definition.  *See* Dkt. No. 8 at 2-4; Dkt. No. 13 at 1-4.  If Arreola chooses to

27  amend, he should allege the time period when he was disabled and facts showing why CDCR is an

28  appropriate public entity defendant for the ADA claim.

United States District Court
Northern District of California

1        Arreola may file an amended complaint on the ADA claim consistent with this order by

2    **April 20, 2017**.  No new claims or parties may be added.  To the extent the parties still wish to

3    postpone discovery, they may file another stipulation for the Court's consideration.

4        **IT IS SO ORDERED.**

5    Dated:  March 31, 2017

6

7

8    _____

9    JAMES DONATO
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28